(Superior Court of Cincinnati.)

Special Term.

JAMES MALONEY AND KATE MA-
LONEY, his wife, v. J. J. KIN-
NEY, Constable, and P.
GLASNER.

---

A mortgagee of chattel property described in secs. 4155-1, of the Revised Statutes of Ohio, must foreclose his mortgage in a court of record; and any proceedings at law intended to evade this rule and to accomplish by indirection what in effect would be a foreclosure will be enjoined by a court of equity. Such a mortgagee will not be permitted, after having secured a judgment for his debt before a magistrate, to levy upon such mortgaged property and sell the same upon levy and execution.

---

SMITH, J.

On December 31, 1896, the plaintiffs, James Maloney and Kate Maloney, executed to the defendant, P. Glasner, their promissory note and secured the same by a chattel mortgage upon their necessary household goods. The note having become due, the mortgagee, Glasner, brought an action against the mortgagors upon their promissory note, and secured a judgment against them for the amount of the note. Thereupon he caused execution to issue upon the judgment, and the constable, J. J. Kinney, in levying such execution, seized upon the chattels covered by said mortgage and advertised them for sale. The plaintiffs claimed that the property was exempt from sale, and demanded of the constable that he decline to sell said property, which demand was refused by the constable upon the ground that in the mortgage executed by the mortgagors they had waived the right to claim exemption for said property as against the debt covered by the mortgage.

Thereupon the plaintiffs brought an action in this court to enjoin the constable and the mortgagee from proceeding to sell said property. A temporary restraining order was granted, and a motion having been filed to dissolve such order, the same was heard upon the petition and the affidavt of the constable.

While the amount involved is small, the case is important as involving the construction of the act of 1894 (91 O. L., 339), with reference to chattel mortgages, and as involving the question as to the right of a mortgagor to protect the rights given him under that statute by an appeal to a court of equity.

The statute reads as follows, (4155-1, sec. 1:) "No chattel mortgage on the necessary household goods, wearing apparel, or mechanic's tools of any person or family, except chattel mortgages given to secure the whole or some part of the purchase price thereof, shall be foreclosed except in a court of record. No such household goods, wearing apparel or mechanic's tools covered by a chattel mortgage, shall be seized or taken out of the possession of the mortgagor before foreclosure, except by a sheriff or constable, and then only after the mortgagee or his agent has presented an affidavit to a judge of some court of record of justice of the peace, setting forth that the mortgage is due, or that the mortgagee is in danger of losing his security, giving the facts upon which he relies; and after obtaining an order from such judge or justice of the peace, directing such sheriff or constable to seize such household goods, wearing apparel, or mechanic's tools, and hold them subject to the order of the court, any stipulation of such mortgage to the contrary notwithstanding; provided, that nothing herein shall apply to the sale of furniture or other household goods by regular dealers; provided further, that this act shall not apply to the foreclosure of chattel mortgages executed prior to the time that this act goes into effect; provided further, that if the mortgagee fails to recover the full amount on his petition, the court shall adjudge the costs against him."

The evils against which this statute is aimed are well understood in this community. For a long time previous to its passage there had existed in this community, a class of money lenders, who, taking advantage of the necessities of the poor, loaned them money at exorbitant rates of interest, securing the same by a mortgage upon the few chattels—generally necessary household goods—of which they were the owners. In the course of time the debt would increase to such an amount that the debtor would be unable to meet it, and thereupon the mortgagee would declare the mortgage broken, replevin the property, and in the end, either by seizing or through legal process in a magistrate's court, become the owner of the same

In order to prevent this practical confiscation of the chattel property of these poor people, the legislature, in response to a popular demand from this county, passed the act above set forth.

Whatever doubts may exist as to the construction of this law in other respects, one point is so expressly declared that it is not open to discussion. That point is, that a chattel mortgage on chattels described in the act shall not be foreclosed except in a court of record.

The mortagee in this case, however, contends that he is not foreclosing the mortgage, and therefore is not compelled to seek his remedy in a court of record; that he has recovered a judgment upon his note and has levied upon this property in satisfaction of the judgment at law; and that these proceedings are strictly proceedings at law, which he is entitled to take, and not proceedings in foreclosure.

The effect of this proceeding, which is to divest the mortgagor of his interest in the chattels mortgaged, is the same as the effect of proceedings in foreclosure; and it seems to me that to permit such a result to take place would be to permit the mortgagee to do by indirection what the statute forbids him to do directly, and therefore to defeat the purpose which the framers of the law had in mind.

By such a proceeding too, the time which by all courts in which foreclosure is had, is given to the mortgagor to redeem before a sale takes place, is denied the mortgagee, and thus he is deprived of a valuable right which evidently it was the intention of the law to preserve for him.

If it is contended that the interference by a court of equity with the regular proceedings at law to sell property under levy and execution is an unheard of assumption of jurisdiction by a court of equity, there are two answers to this contention: First, that we are considering the effect of a statute whose manifest purpose was to forbid what would amount to a foreclosure except by proceedings in a court of record. Second, that such interference by a court of equity is not an unheard of assumption of jurisdiction, but a well settled right of interference which may be invoked by a mortgagee.

Thus in Tice v. Annin, 2 Johnson's Chancery Reports, 125, it was held by Chancellor Kent, that "A mortgagee ought to make his election either to proceed directly on his mortgage, or to seek other property of the mortgagor; he ought not to sell the equity of redemption by execution at law."

And in Severens v. Executors of Woolston, 3 Green, 220, (N. J.); it was held,

that "A court of equity will, by injunction, restrain a mortgagee from proceeding at law to sell the equity of redemption in satisfaction of the mortgage debt."

And in Van Mater et al. v. Conover et al., 3 C. E. Green., 38 (N. J.), this principle was again declared upon the authority of the two preceding cases, and the reason for it stated as follows: "I think he rule thus established a wise and salutary one. Such a sale would deter fair outside bidders from purchasing by the confusion it would naturally occasion as to the effect of the amount of the bid upon the amount of incumbrance to which the purchase would be subject. Any one, upon deliberate calculation and cool consideration, could, no doubt, adjust the matter correctly. But the solution of the problem would cause real difficulty in the haste of bidding at a sheriff's sale. The precedent established in Severens v. Woolston's Executors, in this court, must be followed, and the injunction retained."

For the reasons stated in the foregoing opinion, I am of the opinion that the plaintiff is entitled to an order restraining the constable in this case from advertising and selling said property, and it will be so ordered.

Phares & Ratliff for plaintiff.

Simeon M. Johnson, for defendant.

Note.—Since this opinion was rendered, counsel for defendant have made application to be permitted to raise and argue the question of the constitutionality of this statute; and Judge Smith has consented to consider that question before making any final entry in the case.